UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Federal Trade Commission, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 24-cv-13047 |
| v. ) | |
| ) | Hon. Jorge L. Alonso |
| ACIA17 Automotive Inc., d/b/a Leader ) | |
| Automotive Group, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**Memorandum Opinion and Order**

Plaintiffs the Federal Trade Commission and the People of the State of Illinois bring this action against various Corporate Defendants[1] and James Douvas challenging certain allegedly deceptive and unfair practices related to the sale of automobiles under § 5(a) of the FTC Act, 15 USC § 45(a); the Illinois Consumer Fraud Act, 815 ILCS 505/2; and the Illinois Motor Vehicle Advertising Regulations, Ill. Admin. Code Title 14 § 475.11, et seq. On January 2, 2025, the Court entered a stipulated order for permanent injunction, monetary relief, and other relief, which settled Plaintiffs' claims against the Corporate Defendants but not Douvas. (ECF Nos. 15, 56.) On February 17, 2025, Douvas moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 8(a)(2), 9(b), 9(g), 12(b)(1), and 12(b)(6). (ECF No. 27.) For the reasons that follow, Douvas's motion [27] is denied.

---

[1] The Corporate Defendants are ACIA17 Automotive Inc., ACIA ACQ Corp., ACIA FINCO Corp., ACIA CH LLC, ACIA CL LLC, ACIA HN AUTO LLC, ACIA KL AUTO LLC, ACIA MOTORS LLC, ACIA P LLC, ACIA PG AUTO LLC, ACIA TC AUTO LLC, ACIA TN AUTO LLC, and AutoCanada Inc.

1

**Background**

The Court takes the below facts from the well-pleaded allegations in Plaintiffs' complaint, which are accepted as true for purposes of Douvas's motion to dismiss. *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016).

In 2021, Defendant AutoCanada, struggling with profitability, hired Douvas to serve as its Vice President of U.S. Operations. AutoCanada's profitability quickly improved, resulting in record revenue in the first quarter of 2022, which it attributed to its U.S. operations. Over time, AutoCanada came to own ten automobile dealerships throughout Illinois, collectively doing business as Leader Automotive Group. Douvas managed each of these dealerships, which are owned by the Corporate Defendants.

Plaintiffs allege the increased profitability of these dealerships came from the systematic defrauding of consumers through various efforts led by Douvas. The challenged conduct comes in a number of forms. First, Defendants deceived customers regarding optional add-on products through (1) representing to consumers that add-on products had already been installed on vehicles and were required to be purchased when they had not been installed, (2) representing that add-on products were mandatory when they were not, (3) charging for add-ons customers never agreed to purchase, and (4) charging for add-ons that were never installed. A survey of the dealerships' customers indicates that at least 78% paid for an add-on product that they either never agreed to purchase, or that was falsely described as mandatory.

The dealerships also utilized bait-and-switch practices. They would advertise cars for below market rates touting "transparent pricing" and "no surprise add-ons" to induce customer to travel great distances to purchase a car. However, when customers arrived, they were charged

2

various undisclosed fees, including market adjustments, add-on pricing, and other junk fees which substantially increased the purchase price above what was advertised.

Further, the dealerships would advertise cars that were not available for sale. When a customer arrived at a dealership, they would be told that the vehicle had just been sold and would be pressured into purchasing a more expensive vehicle. Defendants also issued hundreds of thousands of prize mailers to potential customers. These mailers did not disclose clearly and conspicuously (1) that no purchase was required to enter the promotional offer, (2) that a purchase would not improve the chances of winning should they enter the promotion, or (3) various conditions and limitations of the financing the mailers offered. In addition, Defendants sold vehicles that were originally manufactured for the Canadian market to their customers without disclosing either that the vehicle was imported or that importation generally voids manufacturing warranties and coverage for safety recalls.

These deceptive practices led to an outpouring of negative reviews on the dealerships' Google, Yelp, and Facebook pages. To combat these negative reviews, Defendants enacted a scheme to force and pressure their employees to create fake five-star reviews for the dealerships and pressured customers into posting reviews that did not reflect their experiences.

**Legal Standards**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell*

3

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 9(b) requires a party that is alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Stating a claim for fraud "ordinarily requires describing the who, what, when, where, and how of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citations and quotations omitted). A complaint alleges fraud with particularity when it "paint[s] a sufficiently detailed picture of the alleged scheme." *Id.*

## Discussion

For the reasons that follow, the Court denies Douvas's motion to dismiss.

I. **"Subject-Matter Jurisdiction"**

Douvas argues that the Court has lost[2] subject-matter jurisdiction over Plaintiffs' claims against him because of the settlement between the Corporate Defendants and Plaintiffs, relying on

---

[2] Douvas does not contest that the Court has federal-question jurisdiction over the FTC's claims under the FTC Act and supplemental jurisdiction over the claims of the People of the State of Illinois. 28 USC § 1331; 28 USC § 1367. Instead, he seems to argue that the settlement has divested the Court of subject-matter jurisdiction.

*Muhammad v. Oliver*, 547 F.3d 874, 876 (7th Cir. 2008). However, *Muhammad* is inapposite because it concerns the *res judicata* effect of a previous suit on a subsequent suit and not subject-matter jurisdiction. *See generally id.* Because *res judicata* does not create an impediment to subject-matter jurisdiction even if it applied on the facts of this case, it does not divest the Court of subject-matter jurisdiction. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999) ("[R]*es judicata* does not concern itself with the determination of whether a district court may properly exercise subject matter jurisdiction in a particular case."). And the Court sees no reason that *res judicata* should apply on the facts of this case, where the settlement was in the instant action and not a prior suit. Accordingly, the Court declines to dismiss the complaint for lack of subject-matter jurisdiction.

## II. "Standing"

Douvas next argues that the FTC lacks standing to bring its claims against him because he has not been engaged in commerce since September 2023. Specifically, Douvas argues that § 5(a) of the FTC Act applies only to individuals engaged in commerce at the time a complaint is filed. The Court considers this argument under Rule 12(b)(6), as the applicability of the FTC Act to Douvas does not implicate standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) (holding that the question of whether the EPCRA allows recovery for past violations "goes to the merits" rather than subject-matter jurisdiction).[3]

Under Rule 12(b)(6), Douvas's argument is unavailing. The FTC Act provides that "[t]he Commission is hereby empowered and directed to prevent persons . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting

---

[3] While Douvas does not identify any other purported deficiency in standing, the Court has nonetheless independently analyzed the issue and finds no impediment to the Plaintiffs' claims at this stage of the litigation.

commerce." 15 USC § 45(a)(2). The statute's plain language does not require *current* participation in commerce but instead that unfair practices are *prevented*. *Manning v. United States*, 546 F.3d 430, 433 (7th Cir. 2008) ("Courts must apply a statute as written when the language is plain and unambiguous."). As such, current participation in commerce is not required to state a claim under the FTC Act, and Douvas's motion to dismiss on this basis is denied.

In his reply, Douvas seems to change his argument to be that there is no reason to believe that this suit will prevent future conduct prohibited by the FTC Act because of the gap in time since he has been engaged in commerce. Because he did not make this argument in his opening motion, it is waived. *Reed v. Vintage Healthcare Servs., Inc.*, No. 24 C 3186, 2025 WL 36231, at *4 (N.D. Ill. Jan. 6, 2025). However, even considering this argument, the complaint plausibly alleges that Douvas will engage in commerce in the future. For instance, the complaint alleges that Douvas was terminated for cause by Defendants in September 2023—one year into Plaintiffs' investigation into Defendants— and subsequently was employed as an executive at another "multi-location dealership group." (ECF No. 1 ¶ 26.) Accordingly, Douvas's citation of cases concerning dissolved corporations and long-abandoned conduct are not persuasive.[4]

### III. Miscellaneous Arguments for Dismissal

Douvas makes several underdeveloped and scattershot arguments for dismissal, including: (1) the conduct Douvas is alleged to have taken place in was done at the advice of counsel, (2) certain practical considerations support dismissal of the complaint, (3) Douvas is not alleged to have had direct contact with any customers, (4) damages and other relief, including special damages, have not been alleged individually against Douvas, and (5) certain counts are brought

---

[4] The Court does not consider Douvas's averments as to his subsequent employment history that are neither in Plaintiffs' complaint nor subject to judicial notice.

against all Defendants rather than Douvas individually. (ECF No. 28 at 9–10.) Douvas has waived these arguments because they are underdeveloped and cite no legal authority indicating why these facts are relevant or render dismissal appropriate. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.")

### IV.  Rules 8(a)(2) and 12(b)(6)

Douvas next argues that the complaint does not comply with Rule 8(a)(2) and 12(b)(6) because its allegations concerning Douvas contain few to no facts to support Plaintiffs' claims and certain allegations are not directed at Douvas specifically. The Court disagrees and declines to dismiss the complaint on this basis.

The complaint is replete with facts concerning Douvas's conduct in the alleged scheme. A non-exhaustive list is below.

- Douvas required the add-on features Xzilon and LoJack—which caused add-on profits per vehicle to increase from $2,145 in March 2021 to over $4,000 in 2022—and instructed employees to tell customers that the features were not optional. (ECF No. 1 ¶¶ 40, 73.) Around the same time Douvas informed the Illinois Attorney General that such add-ons were optional, he instructed his employees not to include in writing that the add-ons were in fact mandatory and to be cautious that customers may be undercover representatives of the Illinois Attorney General. (*Id.* ¶¶ 78–79.)

- Douvas admitted to intentionally pricing vehicles at lower than market prices to induce customers to come to dealerships, which enabled the dealerships to charge junk fees because, as Douvas explained to employees, once customers travelled to a store, they would not leave without making a purchase. (*Id.* ¶¶ 47, 52.)

- Douvas encouraged dealership managers to generate fake positive reviews from employees and their family members to offset negative reviews regarding Defendants' practices, eventually approving a policy that would withhold compensation for employees until they posted a specified number of fake reviews. (*Id.* ¶¶ 103, 105.)

- Douvas personally approved each purchase order and agreement related to prize mailings that allegedly failed to meet certain disclosure requirements under the Illinois Prizes and

7

Gifts Act. (*Id.* ¶¶ 112–40.)

Plaintiffs also allege Douvas "oversaw virtually every aspect of Defendants' U.S. business," set and enforced policies related to vehicle sales, had a motivational slogan encouraging employees to take as much money from buyers as possible, managed each dealership, regularly approved individual deals, and responded to customer complaints. (*Id.* ¶¶ 5–6, 26.) Taking the allegations as a whole and drawing all reasonable inferences in Plaintiffs' favor, the complaint alleges sufficient facts to make Douvas plausibly liable for the claims brought against him. And while certain allegations might not directly reference Douvas, Plaintiffs have alleged facts indicating Douvas was responsible for setting the challenged policies and practices even if he did not carry out each alleged act. Accordingly, Douvas's motion to dismiss under Rules 8(a)(2) and 12(b)(6) is denied.

**V.     Rule 9(b)**

Douvas next argues that Plaintiffs have failed to state the circumstances of fraud with specificity under Rule 9(b). Even assuming Plaintiffs must meet this standard for their claims, which they dispute, Plaintiffs' complaint does so because it sufficiently provides the who, what, when, where, and how of the alleged scheme in a manner that "paint[s] a sufficiently detailed picture," as outlined below. *AnchorBank,* 649 F.3d at 615.

**Who:** Douvas and other employees of the Corporate Defendants whom he supervised. (*See, e.g.*, ECF No. 1 ¶¶ 5–6, 26, 31–46.)

**What:** Enforcing and implementing various policies that unfairly and deceptively convinced customers into paying higher prices for cars than they otherwise would. (*See, e.g., id.*)

**When:** From March 2021 until the Corporate Defendants terminated Douvas in September 2023. (*See, e.g., id.* ¶¶ 26, 46, 48, 141–69.)

**Where:** Through deceptive mailings and advertisements, at trainings Douvas held with employees, through in-person and telephone contact with consumers, and on the dealerships' social media

8

sites. (*See, e.g.*, *id.* ¶¶ 26, 47, 53–58, 62, 64, 68–70, 72, 74, 76, 79–80, 83–86, 102–09.)

**How:** By various means, including through inducing customers to travel to dealerships based on deceptive advertisements that provided below-market prices that were not actually available due to junk fees, add-on charges that were falsely described as mandatory, and other undisclosed fees (*id.* ¶¶ 47–67, 72–79); not providing add-ons that customers purchased (*id.* ¶¶ 80–82); inserting add-on charges without consumer consent (*id.* ¶¶ 83–90); selling vehicles manufactured for the Canadian market without disclosing that importation voided the cars' warranty (*id.* ¶¶ 98–101); advertising vehicles that had been already sold in order to steer customers to more expensive vehicles (*id.* ¶¶ 68–71); not including required terms in prize mailings (*id.* ¶¶ 112–40); and destroying and concealing evidence of these practices, including through fake social media reviews and the destruction of relevant documents (*id.* ¶¶ 95–97, 102–09).

Because this detail is sufficient to state a claim under Rule 9(b), Douvas's motion to dismiss on this ground is denied.

## Conclusion

For the reasons set forth above, the Court denies Douvas's motion to dismiss [27]. The Court will monitor the docket for updates as the case progresses to determine when a status conference is necessary.

**SO ORDERED.**                                    **ENTERED: May 8, 2025**

                                                                                    _____

                                                                                    **HON. JORGE ALONSO**

                                                                                    **United States District Judge**